UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Michael Morissette         *
                                  *

 Plaintiff,                *
                                  *

v.                         *      CIVIL ACTION NO.
                                  *

The Cote Corporation,     *
                                  *

Defendant            *
                                  *

**PLAINTIFF'S COMPLAINT**
**AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Michael Morissette, by and through counsel, hereby complains against

Defendant, The Cote Corporation, as follows:

**JURISDICTION AND PARTIES**

1.  This action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C. §§
    12101 *et seq.*, the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* and
    the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S. §§ 831 *et seq.*.

2.  Plaintiff Michael Morissette is a resident of Hermon, Penobscot County, Maine.

3.  Defendant, The Cote Corporation, (hereinafter "Cote Corporation"), is a business
    corporation incorporated in Maine, with a principal place of business in Auburn,
    Androscoggin County, Maine.

4.  This Court has original subject matter jurisdiction over Plaintiff's federal claims
    pursuant to 28 U.S.C. § 1331.

5.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to

28 U.S.C. § 1367 because those claims are so related to the federal claims that that they form part of the same case or controversy.

6.     On January 15, 2014, Mr. Morissette filed a charge of discrimination against Defendant with respect to the allegations herein with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

7.     On August 13, 2013, on Mr. Morissette's request, the MHRC issued notice of right to sue to him on his claims under Maine law.

8.     On September 19, 2014, on Mr. Morissette's request, the EEOC issued notice of right to sue to him on his claims under the ADA.

9.     Mr. Morissette has exhausted all administrative remedies.

10.    All of the discriminatory practices alleged herein were committed within the State of Maine, and within Androscoggin County.

11.    Defendant is subject to the jurisdiction of this Court.

12.    This action is brought properly in the District of Maine pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this judicial district.

13.    For calendar years 2012 and 2013, Cote Corporation employed more than 14 employees in each of 20 or more calendar weeks.

14.    At all material times, Cote Corporation employed Mr. Morissette within the meaning of the ADA, the MHRA and the MWPA.

15.    Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Morissette hereby demands a trial by jury on issues triable of right by jury.

## STATEMENT OF FACTS

16.     On about May 9, 2013, Mr. Morissette applied to Cote Corporation for a shop

mechanic position.

17.     On about May 11, 2013, in an interview on his application for employment, Mr.

Morissette agreed to take a Department of Transportation physical required by Cote

Corporation.

18.     Mr. Morissette informed Cote Corporation's chief executive officer, Daniel A. Cote,

Sr., ("CEO Cote") and vice president, Daniel P. Cote, Jr., ("V.P. Cote"), that he had a

stroke two years earlier, and that his doctors had approved his return to work.

19.     Mr. Morissette was hired by Cote Corporation as a shop mechanic on May 20, 2013.

20.     On May 20, 2013, Plaintiff Morissette underwent a physical exam as required by Cote

Corporation, in which the examiner asked for medical information from his medical

providers about the previous stroke and related health conditions.

21.     Mr. Morissette made arrangements for the information requested to be provided to the

medical examiner conducting the physical exam.

22.     As of May 1, 2013, Mr. Morissette had a history of stroke, related neurological

disorder, and carotid artery disease.

23.     On May 20, 2013, CEO Cote asked Mr. Morissette how the physical exam went and

for the medical card from the physical exam.  Mr. Morissette responded that the

examiner was requesting medical information about his stroke and medical history.

24.      During the week of May 20, 2013, CEO Cote asked Mr. Morissette again if he had

received his medical card yet, to which Mr. Morissette responded that he had arranged

to have the requested medical information provided to the examiner.

25.     On about May 20, 2013, Mr. Morissette informed CEO Cote that the pit in the

        mechanic shop was unsafe because it lacked guards, to which CEO Cote responded it

        had always been that way without any problem.

26.     On about May 21, 2013, Mr. Morissette informed Cote's supervisor, Kevin Robinson

        that Cote's practice of using a forklift to remove wheels from cranes was unsafe

        because the wheels were not secured, that they needed a wheel dolly to work safely

        and that Mr. Robinson should tell Cote's CEO of that need.

27.     On about May 24, 2013, Mr. Morissette informed his supervisor, Mr. Robinson, that he

        believed using crane outriggers to lift cranes was unsafe and that they should be using

        jack stands instead, to which Mr. Robinson made no response.

28.     On or about May 27, 2013, CEO Cote asked Mr. Morissette whether he had received

        his medical card yet.  Mr. Morissette responded that he had not.

29.      Mr. Morissette asked CEO Cote if he would still have his job if he did not receive a

        medical card.   CEO Cote replied that they would have to talk about that later, and that

        he wanted to see Mr. Morissette's doctor's letter as well as the medical card.

30.     On or about May 27, 2013, Mr. Morissette objected to his co-workers that he believed

        a medical card was not necessary to perform the job of mechanic, and that if Cote

        Corporation terminated his employment he would report the safety violations in the

        shop government agencies, which of complaints Cote Corporation received notice.

31.     On or about May 29, 2013, Mr. Morissette informed Cote's CEO Cote that he had

        witnessed an unsafe act when a removed crane wheel left unsecured had fallen over,

        endangering workers, and that the shop needed a wheel dolly.   CEO Cote replied that

        they had been using forklifts instead for years, and left.

32.     On or about May 30, 2013, CEO Cote again asked Mr. Morissette whether his medical

records had been requested for the physical examiner.  Mr. Morissette replied that they

had been requested.

33.     On or about May 31, 2013,  Cote Corporation received a medical card and medical

information regarding Mr. Morissette.

34.     On or about May 31, 2013, Cote Corporation terminated Mr. Morissette's

employment, stating falsely they no longer needed his services and that he had been

causing too much animosity in the shop.

35.     Cote Corporation's claimed grounds for terminating Mr. Morissette's employment are

false and pretextual.

36.     During his employment with Cote Corporation, Mr. Morissette had a disability within

the meaning of the ADA, in that his carotid artery disease, stroke history and related

neurological disorder substantially limited him in major life activities of the operation

of major bodily functions, including but not limited to circulatory functions and

neurological functions in the absence of mitigating measures.

37.     At all material times, Mr. Morissette had a disability within the meaning of the

MHRA, 5 M.R.S.A. § 4553-A.  Namely, Mr. Morissette's carotid artery disease, stroke

history and neurological disorder are physical impairments that significantly impaired

his physical health or substantially limited one or more of his major life activities in

the absence of mitigating measures under 5 M.R.S.  4553-A (1)(A).

38.     At all material times, Mr. Morissette has had a record of disability, in that he had a

record of having artery disease, a history of stroke and neurological disorder.

39.     Defendant regarded Mr. Morissette as a person with a disability for the purposes of the

ADA and MHRA.

40.     At all relevant times, Mr. Morissette was qualified to perform the duties of his position

of shop mechanic with Defendant and was able to perform all the essential functions of

his position with or without reasonable accommodations.

41.     Defendant terminated Mr. Morissette's employment because of his disability,  thereby

discriminating against him with respect to the terms, conditions and privileges of

employment because of his disability, in violation of the ADA and the MHRA.

42.     Defendant terminated Mr. Morissette's employment because of his disability rather

than reasonably accommodating his disability, thereby discriminating against him with

respect to the terms, conditions and privileges of employment because of his disability,

in violation of the ADA and the MHRA.

43.     Defendant terminated Mr. Morissette's employment because it regarded him as having

a disability, thereby discriminating against him with respect to the terms, conditions

and privileges of employment because of his disability, in violation of the ADA and

the MHRA.

44.     Defendant terminated Mr. Morissette's employment because he requested

accommodation and opposed discrimination on the basis of disability, thereby

retaliating and discriminating against him in violation of the ADA, the MHRA and the

MWPA.

45.     Defendant's termination of Mr. Morissette's employment was intentional and in

violation of his rights under the ADA, MHRA and MWPA.

46.     As a consequence of Defendant's discriminatory actions and termination of his

employment, Mr. Morissette has suffered damages including but not limited to lost

wages, distress, humiliation, inconvenience, injury to reputation, injury to career and

other pecuniary and non-pecuniary losses.

47.   Mr. Morissette has no plain, adequate or complete remedy at law to fully redress the

wrongs alleged, and will continue to suffer irreparable injury unless Defendant is

enjoined by this Court.

## COUNT I: Americans with Disabilities Act (ADA)

48.   Plaintiff repeats and re-alleges each of the allegations set forth in the preceding

paragraphs as if fully set forth herein.

49.   Defendant discriminated against Mr. Morissette in violation of the ADA when it

terminated his employment because of his disability.

50.   Defendant discriminated against Mr. Morissette in violation of the ADA when it

terminated his employment because of his disability because of his record of a

disability.

51.   Defendant discriminated against Mr. Morissette in violation of the ADA when it

terminated his employment because of his disability because it regarded him as having

a disability.

52.   Defendant discriminated against Mr. Morissette in violation of the ADA when it failed

to reasonably accommodate his disability, and instead terminated his employment

because of disability.

53.   Defendant discriminated against Mr. Morissette in violation of the ADA when it

retaliated against  him by terminating his employment because he requested

accommodation and opposed discriminatory treatment because of his disability.

54.   As a direct and proximate result of Defendant's violations of the ADA, Mr. Morissette

incurred damages.

55.    Defendant intentionally violated the ADA and Mr. Morissette's rights.


## COUNT II: Maine Human Rights Act (MHRA)

56.    Plaintiff repeats and re-alleges each of the allegations set forth in the preceding

paragraphs as if fully set forth herein.

57.    Defendant discriminated against Mr. Morissette in violation of the MHRA when it

terminated his employment because of his disability.

58.    Defendant discriminated against Mr. Morissette in violation of the MHRA when it

terminated his employment because of his disability because of his record of a

disability.

59.    Defendant discriminated against Mr. Morissette in violation of the MHRA when it

terminated his employment because of his disability because it regarded him as having

a disability.

60.    Defendant discriminated against Mr. Morissette in violation of the MHRA when it

failed to reasonably accommodate his disability, and instead terminated his

employment because of disability.

61.    Defendant discriminated against Mr. Morissette in violation of the MHRA when it

retaliated against  him by terminating his employment because he requested

accommodation and opposed discriminatory treatment because of his disability.

62.    As a direct and proximate result of Defendant's violations of the MHRA, Mr.

Morissette incurred damages.

63.    Defendant intentionally violated the MHRA and Mr. Morissette's rights.

## COUNT III: Maine Whistleblowers' Protection Act, (MWPA)

64.    Plaintiff repeats and re-alleges each of the allegations set forth in the preceding

paragraphs as if fully set forth herein.

65.    Defendant violated the MWPA when it discriminated and retaliated against Mr.

Morissette  by terminating his employment because he reported to Defendant conditions

and practices that he reasonably believed violated laws and rules, and that put at risk the

health and safety of himself and other employees.

66.    As a direct and proximate result of Defendant's violations of the MWPA,  Mr. Morissette

suffered damages.

67.    Defendant intentionally violated Mr. Morissette's rights under the MWPA.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

(a) Enter Judgment in his favor;

(b) Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

(c) Enjoin Defendant, its agents, successors, employees, and those acting in concert with Defendant from continuing to violate the rights of Plaintiff;

(d) Order Defendant to employ Plaintiff or alternatively award Plaintiff front pay and benefits;

(e) Award Plaintiff equitable relief for back pay and benefits;

(f) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(g) Award Plaintiff nominal damages;

(h)  Award Plaintiff punitive damages;

(i) Award Plaintiff attorney's fees, including legal expenses, and costs;

(j) Award Plaintiff prejudgment interest;

(k) Permanently enjoin Defendant from unlawfully discriminating on the basis of disability and from retaliation;

(l) Require that the Defendant mail a letter to all employees of Defendant notifying them of the verdict against them and stating that the Defendant will not tolerate discrimination or retaliation in the future;

(m) Require that the Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

(n) Require that the Defendant train all employees about the illegality of discrimination;

and.

      (o) Grant to Plaintiff such other and further relief as may be just and proper.

DATE: November 10, 2014             /s/ Lisa J. Butler_____
                                         Lisa J. Butler, Esq.
                                         Maine Employee Rights Group, P.A.
                                         23 Water Street, Suite 207
                                         Bangor, Maine 04401
                                         lbutler@maineemployeerights.com
                                         Telephone: (207)217-6573

                                         Attorney for the Plaintiff